UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| RONALD PAUL HORNER,<br><br>    Plaintiff,<br><br>v.<br><br>JAMIE GARNER,<br><br>    Defendant. | Case No. 1:16-cv-00054<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Newbern |

To:     The Honorable William L. Campbell, Jr.

## REPORT AND RECOMMENDATION

This matter has been referred to the Magistrate Judge for disposition or to recommend disposition of all pretrial matters. (Doc. No. 8.)

Now pending is a motion to dismiss filed by Defendant Jammie Garner.[1] (Doc. No. 24.) Plaintiff Ronald Paul Horner has responded in opposition. (Doc. No. 31.) For the following reasons, the undersigned RECOMMENDS that Garner's motion to dismiss be GRANTED, that this action be DISMISSED WITHOUT PREJUDICE to Horner filing a second amended complaint.

**I.     Background**

    **A.  Procedural History**

Horner filed this action on July 11, 2016, alleging deliberate indifference to his medical needs while incarcerated at the South Central Correctional Facility (SCCF). (Doc. No. 1, PageID#

---

[1]     Garner is named in the docket as "Jamie Garner." Her counsel identifies her as "Jammie Garner." (Doc. No. 25.)

1

1.) Horner's original complaint was styled as a letter to the Court and identified only Jamie Garner as an individual actor. (*Id.*) A few weeks after initiating this action, and before the action was screened or any defendant served, Horner filed an amended complaint that contained additional allegations. (Doc. No. 6.)

After conducting an initial review of the original and amended complaints under the Prison Litigation Reform Act ("PLRA"), the Court ordered that Garner be served with process. (Doc. No. 8.) Garner was served on October 17, 2016, but made no appearance in the case. (Doc. No. 14.) On January 5, 2018, in response to Horner's case status request, the Court ordered Garner "to file a responsive pleading or otherwise show cause why default should not be entered against her by January 26, 2018." (Doc. No. 19.) Garner filed this motion to dismiss on January 23, 2018 (Doc. No. 24), but does not address her untimely appearance. Because Horner has not moved for entry of default against Garner, the Court will consider her motion.

Horner has responded in opposition to Garner's motion (Doc. No. 31), and, in his response, requested an opportunity again to amend his complaint.[2] (Doc. No. 32, PageID# 98.)

### B. Horner's Allegations

Horner brings his claims against "the medical staff – Mrs. Garner, the H[ealth] S[ervices] A[dministrator] – for nontreatment – deliberate indifference – lack of treatment." He includes a long list of medical grievances in his complaint. First, Horner alleges that "my whole back [is] dead from nerve damage and also my throat [is] eroding to the point where food is going from my throat into my nasal passage and into my windpipe and lungs." (Doc. No. 1, PageID# 1.) He also

---

[2]  In his response, Horner largely repeats the allegations in his complaint or makes new allegations, but he does not specifically address the issues raised by Garner in her motion to dismiss.

states that he has "sores in my mouth and throat which burn badly." (*Id.*) Horner alleges that "this condition has been ongoing for 3 years" and has caused him to lose sixty pounds. (*Id.*)

Horner states that, in April 2014, he was "sent out to the Emergency Room at Wayne Co. Hospital . . . after sitting in a classroom for an hour so the nurses could see if I was faking an illness." (*Id.*) By the time someone called an ambulance, Horner's "blood pressure was 177 over 121." (*Id.*) While in the ambulance, an EMT "gave [Horner] an injection of morphine en route to the [h]ospital." (*Id.*) At the hospital, the "doctor took a chest x-ray [after Horner] told him that I felt a loud pop in my chest in the same area where I had a clot travel up my neck and into the side of my face and it dissipated into my brain one year earlier." (*Id.* at PageID# 2.) Horner states that he was given morphine and an Ativan prescription, but "the medical staff at the prison did not fill it." (*Id.*) Horner was told that he "had a bulge in my back aorta" and the "doctor wanted to see me back in a week." Horner was told "to be very careful not to do anything that could rupture it." (*Id.*) Horner states that he was not sent back to see the doctor at Wayne County Hospital, nor was he treated for this condition again because "the doctor at the prison would not even acknowledge it." (*Id.*) Horner also alleges that he is on the "Traumatic Brain Injury Registry with the state of Tennessee after being stabbed in my left temple and forehead 3 times." Horner's brain was "punctured" and he was "hospitalized for 9 weeks" and "had a brain drain for 3 weeks afterwards." (*Id.* at PageID# 2-3.) Horner states that he has had "auditory and visual hallucination[s]." (*Id.*)

Horner alleges that he has not received treatment that has been prescribed to him while at SCCF. He states that he was sent to a throat specialist who ordered a "scope," but has never had that test. (*Id.*) He alleges that his medications ran out and that he tried to commit suicide three times "when [he] has tried to deal with [his] chronic pain without [his] med[icine]." (*Id.*)

3

Horner alleges that he does not know what to do to receive treatment and that "grievances aren't working." Horner alleges that "this year alone in the past 6 months I have [gone] to the pill window and my med[ications] have not [been] on the cart over 25 times." (*Id.* at PageID# 4-5.) When Horner filed a grievance "it was returned to me as inappropriate." (*Id.* at PageID# 5.)

In addition to repeating many of the allegations of his original complaint, Horner claims in his amended complaint that he has arthritis in his spine and that his orthopedist wanted to operate but "my condition has deteriorated, I have lost my strength, I have stinging, pinching, stabbing nerve pain and numbness to the point where I can't walk." (Doc. No. 6, PageID# 20.) Horner alleges that he needs to see a neurologist and orthopedist. (*Id.*)

In letters to the Court filed after his amended complaint, Horner alleges that, after he served Garner with this lawsuit, his pain medications were discontinued. He states that he has lost seventeen pounds, and that he is fighting suicidal urges. (Doc. No. 7, PageID# 31) He also alleges that he is unable to participate in recreational activities; that he cannot read, play cards or chess because of his brain injury; and that he cannot perform his job duties. (Doc. No. 16, PageID# 50.) Horner alleges that "Sgt. Richards told me today that he was going to fire me which could result in a write up, loss of pay – state draw – and loss of good days – 16 days a month." (*Id.*) He also alleges that his face and head "are burning and stinging to the point I can't hardly finish this letter" and that he has not received his pain medication in months. (*Id.*)

## II. Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim."

4

Case 1:16-cv-00054 Document 34 Filed 08/23/18 Page 4 of 8 PageID #: 113

Fed. R. Civ. P. 8(a)(2). However, the plaintiff must allege sufficient facts to show that the claim is "plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id*. (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Finally, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

In his amended complaint, Horner specifies that he brings his claims under 42 U.S.C. § 1983. (Doc. No. 6, PageID# 20.) "To state a claim under § 1983, a plaintiff must set forth facts that, when favorably construed, establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015).

### III. Analysis

Where a complaint "contains no factual allegations whatsoever against [a] defendant," dismissal is appropriate. *Bloodworth v. Timmerman-Cooper*, No. 2:10-CV-1122, 2012 WL 5830395, at *2 (S.D. Ohio Nov. 16, 2012), report and recommendation adopted, No. 2:10-CV-1122, 2012 WL 6193243 (S.D. Ohio Dec. 12, 2012); *see also Rajapakse v. Baker Donelson Bearman Caldwell & Berkowitz, P.C.,* No. 13-2328-JDT-DKV, 2013 WL 3992523, at *7 (W.D.

Tenn. Aug. 5, 2013) (dismissing defendant "based on a simple reading of the complaint" that did not contain any factual allegations it); *Harris v. Arme*, No. 307–CV–184, 2007 WL 1725635, at *1 (E.D.Tenn. June 13, 2007) (dismissing defendant against whom "Plaintiff has made no factual allegations whatsoever"). While Horner makes extensive and detailed allegations regarding his medical conditions, his claims fall short in assigning responsibility for the harm he has suffered. The Court has carefully reviewed Horner's complaint and amended complaint, as well as the letters he has filed in support of his complaint. In none of these filings does he identify acts that Garner or any other person has taken to cause the harm he has suffered.[3]

To the extent that Horner intends to make his claims against "Mrs. Garner" as a Health Services Administrator (HSA) or supervisor of unidentified "Medical Staff," he fails to state a cognizable claim under § 1983. A plaintiff bringing a § 1983 claim cannot premise liability on a theory of *respondeat superior* or vicarious liability. "[A] supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Instead, "supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor." *Id.* To state a claim against Garner, therefore, Horner must establish that she was "personally involved" or otherwise encouraged or condoned the action of the offending employees. *Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002) (quoting *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001),

---

[3] To the extent that Horner names Aimee Franks or Charlotte Franks in his allegations, he fails to suggest what either person did to harm him.

6

to find that "supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see"). He has made no allegations to that effect.[4]

Horner's allegations simply fail to give Garner, or any potential defendant, fair notice of the nature of his claims. His action is therefore subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not explain which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant).

### IV. Conclusion

For these reasons, the Magistrate Judge RECOMMENDS that the Court GRANT Garner's motion to dismiss. (Doc. No. 24.) However, in his response in opposition to Garner's motion, Horner requests an opportunity to file an amended complaint naming specific individual defendants. (Doc. No. 31.) Accordingly, the Magistrate Judge further RECOMMENDS that the dismissal of Horner's action be WITHOUT PREJUDICE to Horner filing an amended complaint.

Any party has fourteen days after being served with this report and recommendation in which to file any written objections to it. A party who opposes any objections that are filed may

---

[4] Horner states that he attached copies of grievances and notes from "the HSA" to his original complaint. That filing does not have any exhibits and no grievances or notes were otherwise included. Further, to the extent Horner makes allegations against "the HSA," it is not clear that they are against Garner. Horner states that there have been at least five different HSAs while he has been housed at SCCF.

7

Case 1:16-cv-00054 Document 34 Filed 08/23/18 Page 7 of 8 PageID #: 116

file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).
Failure to file specific objections within fourteen days of receipt of this report and recommendation
can constitute a waiver of further appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155
(1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

    It is so ORDERED.

                                                          _____
                                                          ALISTAIR E. NEWBERN
                                                          United States Magistrate Judge